UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH MURPH,

      Plaintiff,

v.                                                                      Case No: 8:20-cv-447-T-36JSS

GTE FEDERAL CREDIT UNION,

      Defendant.

_____/

## O R D E R

This matter comes before the Court on the Defendant's Motion to Dismiss (Doc. 11) and the Plaintiff's response in opposition (Doc. 17). In the motion, Defendant states that the Plaintiff's Complaint should be dismissed because it fails to state a cause of action. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Motion to Dismiss and allow Plaintiff the opportunity to amend.

## I.   BACKGROUND AND FACTS[1]

This case arises out of alleged violations of the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72, *et seq.*  Doc. 1. Plaintiff, Keith Murph, sues Defendant, GTE Federal Credit Union d/b/a GTE Financial, in a two-count Complaint for charges to his personal bank account, which he claims were unauthorized. Plaintiff owned a personal loan account with Defendant that was assigned a unique account number (the "Loan Account"). *Id.* ¶ 9. After encountering financial

---

[1] The following statement of facts is derived from the Complaint (Doc. 1-1), the allegations of which the Court must accept as true in ruling on the instant motion to dismiss. *Linder v. Portocarrero*, 963 F. 2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

difficulties, Plaintiff fell behind on loan payments and incurred an outstanding balance ("Debt"). *Id.* ¶ 10. On September 21, 2019, Plaintiff spoke to Defendant and advised of his intention to file bankruptcy and requested Defendant stop withdrawing automatic payments from his personal bank account ("Bank Account"). *Id.* ¶ 11. Plaintiff provided Defendant his attorney's name and contact information. *Id.* ¶ 12.

On October 19, 2019, Defendant withdrew $180.47 from Plaintiff's Bank Account, despite Plaintiff's previous request to discontinue automatic withdrawals. *Id.* ¶ 13. Plaintiff again requested Defendant stop taking withdrawals from his Bank Account for purposes of paying the Debt. *Id.* ¶ 14. Defendant stated it needed a bankruptcy case number before it could stop the automatic withdrawals. *Id.* ¶ 15. Defendant refused to refund the unauthorized withdrawal. *Id.* On November 9, 2019 and December 19, 2019, Defendant withdrew $180.47 each month from Plaintiff's Bank Account without Plaintiff's authorization. *Id.* ¶ 16. Defendant again withdrew $180.47 on January 21, 2020 and on February 19, 2020, without Plaintiff's authorization. *Id.* ¶¶ 18, 19. The unauthorized withdrawals were completed in an attempt to collect a debt. *Id.* ¶ 20.

In Count I of his Complaint, Plaintiff alleges the unauthorized withdrawals violated EFTA and caused him to incur attorney's fees and suffer anxiety, stress, lost sleep, annoyance, and aggravation. *Id.* ¶¶ 23–30. In Count II, Plaintiff alleges Defendant violated Florida Statute §§ 559.72(7) and 559.72(9), by engaging in illegal collection activities reasonably expected to harass Plaintiff and by misrepresenting Defendant's right to make five unauthorized electronic withdrawals from his Bank Account. *Id.* ¶ 33. As a result of the alleged FCCPA violations, Plaintiff claims he incurred legal fees and suffered damages due to anxiety, stress, loss of sleep, annoyance, and aggravation. *Id.* ¶¶ 35–41.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

## III.    DISCUSSION

This case involves automatic withdrawals Defendant deducted from Plaintiff's personal bank account to pay a delinquent loan balance. Plaintiff claims he withdrew his authorization and directed Defendant to stop withdrawing the monthly loan payments from his personal bank account. Defendant responds that, as a federal credit union, it was authorized under federal law, specifically 12 U.S.C. § 1757(11), to continue making the withdrawals to satisfy the outstanding financial obligation. Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim. Doc. 11. Plaintiff responds that he has properly pleaded violations of EFTA and FCCPA and any reference by Defendant to the loan agreement terms are outside of the four corners of the Complaint and may not be considered on a motion to dismiss.

**A.      EFTA**

Plaintiff alleges that Defendant violated 15 U.S.C. § 1693e(a) by initiating five electronic

fund transfers out of his bank account without his authorization. This provision of the EFTA

permits oral notification to a financial institution of an individual's request to stop a preauthorized

electronic fund transfer:

> a) A preauthorized electronic fund transfer from a consumer's
> account may be authorized by the consumer only in writing, and a
> copy of such authorization shall be provided to the consumer when
> made. A consumer may stop payment of a preauthorized electronic
> fund transfer by notifying the financial institution orally or in
> writing at any time up to three business days preceding the
> scheduled date of such transfer. The financial institution may require
> written confirmation to be provided to it within fourteen days of an
> oral notification if, when the oral notification is made, the consumer
> is advised of such requirement and the address to which such
> confirmation should be sent.
>
> (b) In the case of preauthorized transfers from a consumer's account
> to the same person which may vary in amount, the financial
> institution or designated payee shall, prior to each transfer, provide
> reasonable advance notice to the consumer, in accordance with
> regulations of the Bureau, of the amount to be transferred and the
> scheduled date of the transfer.

15 U.S.C. § 1693e.

To state a claim pursuant to the EFTA, Plaintiff must allege that the transactions at issue

are electronic fund transfers as defined by the Act. 15 U.S.C. § 1693a(6). The Act defines

"electronic fund transfer," in relevant part, as follows:

> [A]ny transfer of funds, other than a transaction originated by check,
> draft, or similar paper instrument, which is initiated through an
> electronic terminal, telephonic instrument, or computer or magnetic
> tape so as to order, instruct, or authorize a financial institution to
> debit or credit an account. Such term includes, but is not limited to,
> point-of-sale transfers, automated teller machine transactions, direct
> deposits or withdrawals of funds, and transfers initiated by
> telephone.

15 U.S.C. § 1693a(6).

Defendant argues that Plaintiff's Complaint is due to be dismissed because Defendant's conduct described in the Complaint is expressly authorized by 12 U.S.C. § 1757(11), 12 C.F.R. § 701.39, and the loan agreement. Plaintiff contends that the Court may not consider the loan agreement because it is not "within the four corners of the Complaint." However, the Eleventh Circuit recognizes that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim; and (2) undisputed."). Here, Plaintiff makes specific reference to the personal loan account, which Plaintiff alleges constitutes a "debt" for purposes of his claims against Defendant and which Plaintiff acknowledges was in default. Thus, the loan, *i.e.* the Debt, is central to Plaintiff's claims and Plaintiff does not dispute the authenticity of the loan/Debt. Rather, Plaintiff merely argues the Court should not consider it because he did not attach it to his Complaint. Because Plaintiff's Complaint relies on the existence of the Debt in making his claims, the Court will consider it on the instant motion.

Page 5 of the Loan, titled Security Agreement, contains a section separated by a box from the remaining text on the page, which states in relevant part:

> "**CONSENSUAL PLEDGE of SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** by signing the Loan Application or Consumer Lending Plan, and/or by accessing, using, or otherwise accepting any funds, accounts or

services, you **grant us, and we impress, a lien on your shares and deposits in the Credit Union.** We also have similar statutory lien rights in your shares and deposits under the Federal Credit Union Act….”

Doc. 11 at 9 (emphasis in original).

Defendant's right to impress a lien on Plaintiff's personal bank account is authorized by federal statute. Under 12 U.S.C. § 1757(11), federal credit unions are authorized "to impress[2] and enforce a lien upon shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable by him." A federal credit union may enforce its statutory lien "when the member fails to satisfy an outstanding financial obligation due and payable to the credit union." 12 C.F.R. §701.39(d)(2). Specifically, "a federal credit union may enforce its statutory lien[3] against a member's account(s) by debiting funds in the account and applying them to the extent of any of the member's outstanding financial obligations to the credit union." 12 C.F.R. § 701.39(d)(1).  Further, "[a] federal credit union need not obtain a court judgment on the member's debt, nor exercise the equitable right of set-off, prior to enforcing its statutory lien against the member's account." 12 C.F.R. § 701.39(d)(3).

Plaintiff alleges that he fell behind on his loan payments and his loan became delinquent. Doc. 1 ¶ 10. He does not claim that he ever became current on his loan before the alleged withdrawals were made by Defendant to satisfy the Debt. Defendant's statutory lien is superior to other claims. *See* 12 C.F.R. § 701.39 ("Except as otherwise provided by law, a statutory lien gives the federal credit union priority over other creditors when claims are asserted against a member's

---

[2] "Impress means to attach to a member's account and is the act which makes the lien enforceable against that account." 12 C.F.R. § 701.39(a)(2).
[3] "Statutory lien means the right granted by section 107(11) of the Federal Credit Union Act, 12 U.S.C. 1757(11), to a federal credit union to establish a right in or claim to a member's shares and dividends equal to the amount of that member's outstanding financial obligation to the credit union, as that amount varies from time to time." 12 C.F.R. § 701.39(a)(5).

account(s).”). Plaintiff does not allege any legal basis to establish that his loan or his personal bank account would be exempt from application of Defendant's superior statutory lien. While Plaintiff alleges that he informed Defendant that he intended to file bankruptcy, he does not allege that he filed bankruptcy or that the automatic stay of a bankruptcy proceeding applied to preclude Defendant from lawfully enforcing its lien. Nor does he allege the applicability of any other law that would exempt his loan and accounts from Defendant's rights under federal law to enforce its lien upon Plaintiff's shares and dividends, to the extent of any loan made to Plaintiff and any dues or charges payable by him. *See* 12 U.S.C. § 1757(11). Thus, on the facts alleged, Plaintiff fails to state a claim under the EFTA.

### B.     FCCPA

The FCCPA permits a "debtor" to bring a civil action against a person who violates the statute's provisions. § 559.77(1), Fla. Stat. (2017). Unless the context otherwise indicates, a "debtor" is defined as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8). Plaintiff qualifies as a debtor.

Here, Plaintiff alleges Defendant violated paragraphs (7) and (9) of § 559.72(7), which provide:

> In collecting consumer debts, no person shall:

> > (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

. . .

> > (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72.

Regarding paragraph (7), no definitive threshold has been set to determine what frequency or volume of calls violates the FCCPA, but "courts generally have held that one or two phone calls per day are not sufficient ... absent evidence of other egregious conduct associated with the calls." *Wolhuter v. Carrington Mortg. Servs., LLC*, No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *3 (M.D. Fla. Oct. 28, 2015) (collecting cases). For example, if calls are made in a harassing nature or pattern, such as during overnight or early morning hours, this could support a conclusion that the defendant violated the FCCPA. *Id.* Additionally, even if a plaintiff submits proof of numerous calls, there will be no violation of the FCCPA if "the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." *Harrington v. Roundpoint Mortg. Servicing Corp*., No. 2:15–cv–322–FtM–38MRM, 2017 WL 1378539, at *10 (M.D. Fla. Apr. 11, 2017) (quoting *Story v. J.M. Fields, Inc*., 343 So.2d 675, 677 (Fla. 1st DCA 1977)). However, if calls "continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed," then the communication "can reasonably be expected to harass the debtor" and "tends only to exhaust the resisting debtor's will." *Story*, 343 So.2d at 677.

Because the FCCPA states that "due consideration and great weight shall be given to the interpretations of the ... federal courts relating to the Federal Fair Debt Collection Practices Act (FDCPA)," district courts have applied the standards of the FDCPA when interpreting section 559.72(7). *Harrington*, 2017 WL 1378539 at *10 (citing *Leahy–Fernandez v. Bayview Loan Servicing, LLC*, 159 F.Supp.3d 1294, 1304 (M.D. Fla. 2016)). Courts have previously indicated in the context of the FDCPA that calling after being asked to stop may constitute egregious conduct in conjunction with daily calls that could be considered to harass a debtor. *Waite v. Fin. Recovery*

8

*Servs., Inc.*, No. 8:09-cv-2336-T-33AEP, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010) (collecting cases).

Plaintiff claims he has sufficiently alleged a violation of paragraph (7) because he alleges that he spoke to Defendant twice and advised it to cease making the withdrawals, and that notwithstanding, Defendant continued to make five unauthorized withdrawals. While there is no set number of calls required to be considered harassing, the conduct alleged must still be harassing or egregious. Even considering the allegations in a light most favorable to Plaintiff, there is nothing in those allegations that rises to the level of being harassing or egregious. Plaintiff alleges he had two conversations with Defendant; there is no allegation that Defendant initiated the calls to Plaintiff, but even if it did, Plaintiff does not allege any facts about the conversations that could be considered harassing. Rather, Plaintiff suggests the five withdrawals which were "unauthorized" constituted harassing conduct under the FCCPA. The Court disagrees. The allegations in Plaintiff's Complaint fall far short of alleging that Defendant's communications with Plaintiff occurred with such frequency as can reasonably be expected to harass him or his family, or that Defendant willfully engaged in other conduct which can reasonably be expected to abuse or harass Plaintiff or his family. *See* § 559.72(7). Thus, the motion to dismiss is due to be granted on this issue.

Under paragraph (9) of § 559.72(9), people collecting consumer debts are prohibited from "assert[ing] the existence of some ... legal right when such person knows that the right does not exist." "The word 'knows' within the statute means to have actual, rather than constructive, knowledge of the illegitimacy of the debt or right." *Scott v. Fla. Health Sciences Ctr., Inc.*, No. 8:08-cv-1270-T-24-EAJ, 2008 WL 4613083, at *2 (M.D. Fla. Oct. 16, 2008) (citing *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1363 (S.D. Fla. 2000)). As discussed in the EFTA section above, the Court will consider the loan documents attached to Defendant's motion to dismiss as

the Debt in the loan is a central part of Plaintiff's claims. In so doing, Defendant establishes that as a federal credit union, it had a statutory right to make the withdrawals. Nowhere in Plaintiff's Complaint does he identify any exemption that would have excluded his loan or accounts from application of 12 U.S.C. § 1757(11) or 12 C.F.R. § 701.39. Because federal law dictates that Defendant's statutory lien is superior and Plaintiff has not asserted allegations to demonstrate otherwise, Plaintiff fails to adequately allege that Defendant was asserting a right that it knew did not exist.

## IV.    CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is due to be granted. Accordingly, it is hereby

**ORDERED**:

1.    Defendant's Motion to Dismiss (Doc. 11) is **GRANTED**.

2.    Plaintiff's Complaint is **DISMISSED without prejudice**.

3.    Although the Court questions Plaintiff's ability to allege a plausible claim for relief on these facts, the Court will allow Plaintiff one opportunity to file an amended complaint by **December 14, 2020**. If Plaintiff fails to file an amended complaint within the time permitted, this case will be dismissed without further notice.

**DONE AND ORDERED** in Tampa, Florida on November 29, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any